UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| RAYMOND LEE WAGNER, Jr., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil No. 3:14-CV-1831 |
| ) | Judge Aleta A. Trauger |
| ) | |
| INTERNATIONAL AUTOMOTIVE ) | |
| COMPONENTS GROUP NORTH ) | |
| AMERICA, INC. and CAD ENGINEERING ) | |
| RESOURCES INC. D/B/A CER GROUP, ) | |
| N.A., INC., ) | |
| ) | |
| Defendants. ) | |

# MEMORANDUM

On November 7, 2014, defendants International Automotive Components Group North America, Inc. ("IAC") and CAD Engineering Resources Inc. d/b/a CER Group, N.A., Inc. ("CAD") filed a Joint Motion to Dismiss the Amended Complaint (Docket No. 27), to which plaintiff Raymond Lee Wagner, Jr. ("Wagner") has filed a Response (Docket No. 33), and the defendants have filed two Joint Replies (Docket Nos. 37, 41). For the following reasons, the court will deny the Motion.

## BACKGROUND

**I.** **Amended Complaint Allegations**

At the time of the incident giving rise to this action, Wagner was an employee of True Blue, Inc. d/b/a/ Labor Ready ("True Blue"), a company which provides workers to other businesses on a temporary basis. Wagner was assigned by True Blue to work at a factory ("Springfield Plant") owned by IAC and operated by IAC and CER.

1

The court focuses on the well-pleaded allegations in the Amended Complaint. Wagner was hired by True Blue without any involvement of the defendants. (Docket No. 26 at ¶ 5.) True Blue entered into a contract to provide the defendants with services. (*Id*. at ¶ 6.) Wagner had no direct contractual relationship with the defendants. (*Id*. at ¶ 5.) Wagner was paid by True Blue. (*Id*. at ¶ 7.) The plaintiff alleges that True Blue retained the ability to control the work to be performed by Wagner, including the ability to discipline or terminate him. (*Id*. at ¶ 8.)

At the Springfield Plant, IAC manufactures components that are placed into newly manufactured automobiles. (*Id*. at ¶ 9.) On August 11, 2013, Wagner was working in the Springfield Plant and performing tasks alongside an employee of the defendants. (*Id*. at ¶ 10.) As Wagner was placing form material into a permanent form ("mold press"), the machinery resumed operation and the mold press crushed Wagner's body. (*Id*. at ¶¶ 12-13.) Wagner suffered serious and permanent injuries. (Id. at ¶ 17.) The defendants had exclusive control over the ownership, installation, maintenance, and servicing of the machinery relevant to Wagner's injury. (*Id*. at ¶ 20.)

## II. Wagner's Claims and the Defendants' Rule 12(b)(6) Motion

The Amended Complaint is not a model of organization. It appears that Wagner brings claims against the defendants based upon multiple theories of liability, each of which sounds in simple negligence. These claims include: (1) failure to properly hire and train the employee who worked with Wagner; (2) failure to train Wagner; (3) failure to adequately warn Wagner of dangers at the Springfield Plant; (4) failure to provide a safe working environment; (5) operation of the mold press in a defective manner or condition; (6) failure to provide adequate safeguards to prevent direct employee exposure to the mold press; (7) failure to adequately maintain the mold

press; and (8) violation of Tenn. Code Ann. § 50-3-105 by failure to provide a place of employment free from hazards likely to cause death or serious injury or harm to employees (*Id*. at ¶¶ 14-18.) The Amended Complaint does not contain any claim premised upon reckless or intentional conduct. (*Id*., *passim*.)

The defendants have moved to dismiss the Amended Complaint based upon the exclusivity provision of Tenn. Code Ann. § 50-6-108. This statute provides that workers' compensation insurance benefits are the exclusive remedy for individuals who are injured while working, unless there is actual intent of the employer to injure the employee. *See Valencia v. Freeland and Lemm Constr. Co.*, 108 S.W.3d 239, 242 (Tenn. 2003) (citing *Liberty Mut. Ins. Co. v. Stevenson*, 368 S.W.2d 760 (Tenn. 1963)). The defendants contend that the Amended Complaint should be dismissed because Wagner has only asserted claims for ordinary negligence and has failed to bring any claim involving actual intent. The defendants invoke the "borrowed servant" or "loaned employee" doctrine ("Borrowed Servant Doctrine"), under which a plaintiff's status as a temporary employee does not negate the exclusivity of the workers' compensation system, if it is determined that an employee's actual employer lends the employee to a "special employer" to perform certain duties. The defendants claim that they are Wagner's "special employer" for purposes of the Borrowed Servant Doctrine. In response, Wagner essentially argues that there are insufficient grounds at this stage of the case for the court to find that he is a borrowed servant of the defendants.

## RULE 12(b)(6) STANDARD

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as

true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). The Federal Rules of Civil Procedure require only that a plaintiff provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). The court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

A complaint's allegations, however, "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action," but, instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950.

## ANALYSIS

The Borrowed Servant Doctrine applies if (1) an employee has made a contract of hire, express or implied, with the special employer, (2) the work being done by the employee is essentially that of the special employer, and (3) the special employer has the right to control the details of the employee's work. *Catlett v. Indem. Ins. Co. of N. Am.*, 813 S.W.2d 411, 414-15 (Tenn. 1991) (citing *Winchester v. Seay*, 409 S.W.2d 378 (Tenn. 1966)); *Bennett v. Mid-South*

4

*Terminals Corp.*, 660 S.W.2d 799, 801 (Tenn. App. 1983). Once these elements are satisfied, the special employer is treated as the employer's direct employer for purposes of the exclusivity of the workers' compensation system. *Bennett*, 660 S.W.2d at 802 (citing *Carpenter v. Hooker Chem. & Plastics Corp.*, 553 S.W.2d 356 (Tenn. App. 1977)).

The first two elements of the Borrowed Servant Doctrine are met here. First, under Tennessee law, Wagner has an implied contract with the defendants. When a worker knowingly becomes an employee of a temporary services agency, he generally consents to work for special employers. *Bennett*, 660 S.W.2d at 801-02. In this situation, the law presumes that Wagner knew that all of his work would be performed for the various customers of temporary services provider True Blue. The defendants were two of those customers. Because Wagner consented to work for the defendants through his employment by True Blue, an implied contract exists between Wagner and the defendants. *See id.* Second, Wagner was doing the work of the defendants. The defendants manufacture automobile components; Wagner acknowledges that, at the time of his injury, he was loading material into a mold press at the defendants' Springfield Plant for that purpose. Wagner's brief arguments to the contrary as to these elements are unpersuasive.

The parties part ways, however, as to whether the defendants had the right to control the details of Wagner's work. The defendants rely upon a "contract" between themselves and True Blue that they have attached to the Motion to Dismiss. (Docket No. 28, Ex. A.) The defendants maintain that it is proper for the court to consider the contract because it is mentioned by Wagner in the Amended Complaint (Docket No. 26 at ¶ 6) and integral to these proceedings. The defendants argue that the contract establishes that, under the terms of their agreement with True Blue, True Blue did not provide supervision for its employees assigned to the Springfield Plant

and that it was, instead, the defendants who were responsible for "adequately and reasonably supervising and directing the activities" of True Blue's temporary employees. (Docket No. 28, Ex. A at p. 11.) Accordingly, the defendants conclude that True Blue "had assigned the right to control Wagner to [them]." (Docket No. 28 at pp. 10-11.)

Wagner, on the other hand, contends that the contract between True Blue and the defendants is insufficient to establish the third element of the Borrowed Servant Doctrine. Wagner argues that the part of the contract upon which the defendants rely was executed one week *after* Wagner's injury and, thus, does not (and cannot) speak to the supervision or control of True Blue's temporary employees prior to, or on the date of, Wagner's injury. Wagner maintains, therefore, that the contract is (1) irrelevant to the question of how and by whom Wagner was actually supervised before and at the time of his injury and (2) insufficient to defeat Wagner's factual allegation in the Amended Complaint that True Blue, as opposed to the defendants, retained the ability to control Wagner's work at the Springfield Plant.

The entire contract between True Blue and the defendants for the provision of temporary labor is (1) properly considered by the court because it is explicitly referenced in the Amended Complaint[1] and (2) relevant, because it speaks directly to whether the defendants should be shielded by Tennessee law from having to defend a negligence action for damages. The contract attached by the defendants consists of three separately executed documents. The first of these is a Master Services Agreement dated November 7, 2012 ("MSA"); the second is an "Agreement

---

[1] For this reason, there is no need to convert the Motion to Dismiss into a motion for summary judgment under Federal Rule of Procedure 12(d). *See Greenberg v. Life Ins. Co.*, 177 F.3d 507, 514 (6th Cir. 1999) (citing *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997); 11 JAMES W. MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.30[4] (3d ed. 1998)); *see also* Docket No. 33 at pp. 10-12; Docket No. 37 at pp. 1-3.

for the Operation of Equipment," dated August 19, 2013; and the third is an "Addendum for the Supply of Temporary Staffing Services," dated August 19, 2013 ("Addendum"). The MSA does not speak to the question of which party retained the ability to direct True Blue employees assigned to the Springfield Plant. Instead, the language relied upon by the defendants is found in the Addendum.[2] Wagner was injured on August 11, 2013. While the Addendum was by its terms incorporated into the existing MSA, there is no question that it was executed after the period of time relevant to Wagner's Amended Complaint.

The defendants argue that, at this stage of the case, the court should definitively find that the Addendum governs the relationship of True Blue and the defendants back to the date of execution of the MSA, irrespective of the date that the Addendum was executed. (Docket No. 37 at pp. 5-6.) In support of their argument, the defendants rely only upon a 1960 Sixth Circuit decision and a New York state appellate court decision. The Sixth Circuit case, *Allied Steel & Conveyors, Inc. v. Ford Motor Co.*, 277 F.2d 907 (6th Cir. 1960), concerns an indemnity provision attached to a purchase order that stated that the purchase order was not binding until accepted and that such acceptance should be shown by execution of a returned acknowledgment copy. The Court of Appeals, on review of a judgment at trial, found that the returned acknowledgment copy was merely a suggested method of acceptance that did not preclude acceptance by some other method, such as partial performance, and that the indemnity provision was indeed made enforceable by said partial performance. *Id.* at 910-13. The *Allied Steel* scenario is not analogous to the facts of the instant case.

---

[2] In the brief in support of the Motion to Dismiss, the defendants made no mention of the facts that (1) the contract contains documents executed on different dates and (2) the provision relied upon by the defendants is contained in a document executed after Wagner's injury.

7

The New York state court case, *Pena v. Chateau Woodmere Corp.*, 304 A.D.2d 442, 443-44 (N.Y. App. Div. 2003), involves an indemnification agreement that was executed on one date but explicitly made effective retroactively to a prior date. This decision was, however, an appeal of a summary judgment order that was rendered by a trial court after the parties had an opportunity to adduce evidence as to whether the agreement was made "as-of" a prior date and whether the parties actually intended it to apply as of that date. *See id*. at 444. Indeed, the New York court specifically discusses deposition testimony and affidavits that comprised evidence in the summary judgment record. *Id.* There has yet been no opportunity to adduce such evidence here, where the defendants seek dismissal based solely on the bare Addendum.

In short, the defendants' argument is unconvincing.[3] At this stage of the case, Wagner is entitled to his well-pleaded allegation that True Blue, and not the defendants, retained control over his employment. Wagner has stated a facially plausible claim for relief based upon that allegation. This is what is required – not a showing that Wagner can ultimately prove his claim. The court finds that it would be inappropriate to dismiss the Amended Complaint based solely upon a document executed by the defendants after the fact of Wagner's injury. Wagner is entitled to discover and offer evidence to support the claim that his work was directed by True Blue. Evidence gathered in discovery in this case may or may not establish that the defendants exercised control over and supervision of Wagner during the relevant time frame at the

---

[3] In the Reply, the defendants note that none of the decisions upon which they have relied actually require a written contract between the special employer and the temporary staffing agency in order for workers' compensation exclusivity to apply. (Docket No. 41 at p. 4.) Many of those citations are summary judgment decisions reached at a different procedural posture than the instant case. Beyond that, this fact is not outcome determinative here, where there *is* a contract that purportedly speaks to that relationship and its meaning and effective date are disputed.

Springfield Plant. The defendants may, at the appropriate time, choose to file a motion for summary judgment re-asserting the defense of the exclusivity provision of Tenn. Code Ann. § 50-6-108 and the Borrowed Servant Doctrine. For now, this action will proceed.

## **CONCLUSION**

For the foregoing reasons, the defendants' Motion to Dismiss (Docket No. 27) will be denied.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge