# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **RAYMOND LEE WAGNER, Jr.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil No. 3:14-CV-1831** |
| | ) | **Judge Aleta A. Trauger** |
| | ) | |
| **INTERNATIONAL AUTOMOTIVE** | ) | |
| **COMPONENTS GROUP NORTH** | ) | |
| **AMERICA, INC.; CAD ENGINEERING** | ) | |
| **RESOURCES INC., D/B/A CER GROUP** | ) | |
| **N.A., INC.; MACHINERY MOVERS &** | ) | |
| **STRUCTURAL SPECIALIST; and** | ) | |
| **DRM, LLC,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM & ORDER

Pending before the court are Motions to Dismiss filed by defendants Machinery Movers

& Structural Specialist ("MMSS") (Docket No. 78) and DRM, LLC ("DRM") (Docket No. 82),

to which the plaintiff Raymond Lee Wagner, Jr. ("Wagner") has filed Responses in opposition

(Docket Nos. 84, 85), MMSS and DRM have filed Replies (Docket Nos. 90, 91), and Wagner has

filed a joint Sur-Reply (Docket No. 95). For the following reasons, the court will grant the

defendants' motions.

## BACKGROUND

This action arises from injuries that Wagner suffered on August 11, 2013, while working

as a temporary employee at a factory in Springfield, Tennessee (the "Springfield Plant"). The

Springfield Plant was owned by defendant International Automotive Components Group North

America, Inc. ("IAC") and operated by IAC and defendant CAD Engineering Resources Inc.

1

d/b/a CER Group N.A., Inc. ("CER").  Wagner was injured while operating a mold press, which

is a device utilized in the manufacture of parts for automobiles.  (*See* Docket No. 49.)

Wagner initially filed suit on August 8, 2014, against only IAC and CER.  (Docket No.

1.)  On October 24, 2014, Wagner filed an Amended Complaint.[1]  (Docket No. 26.)  On January

30, 2015, IAC and CER timely filed Answers to the Amended Complaint.  (Docket Nos. 52, 53.)

In their Answers, IAC and CER asserted the general affirmative defenses of "intervening

negligent acts of third parties" and "contributory negligence and/or comparative fault."  (Docket

No. 52 at p. 7, ¶¶ 4-5; Docket No. 53 at p. 7, ¶¶ 4-5.)  IAC and CER did not name the third

parties to which they were referring in asserting these potential defenses.[2]  (*Id*.)

On April 30, 2015, Wagner filed a Motion for Leave to Amend the [Amended] Complaint

to add as defendants MMSS and DRM.[3]  (Docket No. 63.)  MMSS is a Tennessee corporation

that specializes in machinery moving and millwright services.  DRM is a Tennessee limited

liability company that provides manufacturing plant design, installation, and integration

solutions.

In the memorandum in support of his motion to amend, Wagner cited IAC's April 10,

2015 interrogatory response, which stated:

---

[1] IAC and CER moved to dismiss the Amended Complaint; on January 15, 2015, their
motions were denied by the court.  (Docket Nos. 49, 50.)  Familiarity with the court's January
15, 2015 Memorandum is presumed.

[2] Wagner filed a Motion to Strike Answers to the Amended Complaint (Docket No. 57),
complaining these defenses were impermissibly vague, to which IAC and CER responded in
opposition (Docket No. 60).  This motion would subsequently be mooted by the filing of the
Second Amended Complaint, discussed *infra*.  (*See* Docket No. 68.)

[3] Wagner also sought to add IAC Springfield, LLC, which IAC had identified to Wagner
in discovery as a proper party to be named in this action.  (Docket No. 64 at p. 1.)  This addition
has not been challenged.

2. Identify who or what was responsible for the installation of the machine at the Springfield Plaint in which the [p]laintiff was injured.

ANSWER: IAC contracted with Machinery Movers and DRM, LLC to move the machine from Huron, Ohio to the Springfield facility. The installation was overseen by Greg Wilkerson, corporate engineer.

(Docket No. 65 at p. 2.) Wagner then contended that MMSS and DRM may be the parties that IAC and CER were referring to in asserting their intervening third parties and contributory negligence affirmative defenses. Accordingly, Wagner suggested that MMSS and DRM may be added as defendants "by right" pursuant to Tennessee Code Annotated § 20-1-119. (Docket No. 64 at p. 2.)

The court granted Wagner leave to file a Second Amended Complaint (Docket No. 66.) On June 9, 2015, Wagner filed the Second Amended Complaint, alleging that MMSS and DRM "were negligent in the moving and installation of the mold press, which caused the press to malfunction." (Docket No. 67 at p. 4, ¶ 18.)

On June 24, 2015, IAC and CER filed Answers to the Second Amended Complaint. (Docket Nos. 71, 72.) The Answers reiterated the general affirmative defenses of the "intervening negligent acts of third parties" and "contributory negligence and/or comparative fault" but again did not specifically name MMSS or DRM or any other third party. (Docket No. 71 at p. 10, ¶¶ 4-5; Docket No. 72 at p. 10, ¶¶ 4-5.) Both IAC and CER denied "knowledge or information sufficient to form a belief as to the truth or falsity" of the allegations against MMSS and DRM. (Docket No. 71 at p. 6, ¶ 18; Docket No. 72 at p. 6, ¶ 18.)

On July 15 and 16, 2015, MMSS and DRM filed the instant Motions to Dismiss on the grounds that this action is barred against them by the applicable statute of limitations. (Docket

3

Nos. 78, 82.)  On July 27, 2015, Wagner filed Responses in opposition.  (Docket Nos. 84, 85.)

On August 7, 2016, MMSS and DRM filed Replies.  (Docket Nos. 90, 91.)  On August 24, 2015,

Wagner filed a Sur-Reply.  (Docket No. 95.)

## RULE 12(b)(6) STANDARD

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court

will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as

true, and draw all reasonable inferences in favor of the plaintiff."  *Directv, Inc. v. Treesh*, 487

F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002).  The

Federal Rules of Civil Procedure require only that a plaintiff provide "'a short and plain

statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and

the grounds upon which it rests."  *Conley v. Gibson*, 355 U.S. 41, 47 (1957).  The court must

determine only whether "the claimant is entitled to offer evidence to support the claims," not

whether the plaintiff can ultimately prove the facts alleged.  *Swierkiewicz v. Sorema N.A.*, 534

U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

Detailed factual allegations are not required, but a complaint's allegations "must be

enough to raise a right to relief above the speculative level."  *Bell Atlantic Corp. v. Twombly*, 550

U.S. 544, 555 (2007).  To establish the "facial plausibility" required to "unlock the doors of

discovery," the plaintiff cannot rely on labels, "legal conclusions" or "[t]hreadbare recitals of the

elements of a cause of action," but, instead, the plaintiff must plead "factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *Twombly*, 550 U.S. at 555.  "[O]nly a complaint

that states a plausible claim for relief survives a motion to dismiss."  *Iqbal*, 556 U.S. at 679

(quoting *Twombly*, 550 U.S. at 556).

## ANALYSIS

Wagner's lawsuit alleges a personal injury arising from an accident at the Springfield Plant that occurred on August 11, 2013. As the parties agree, the statute of limitations for filing a personal injury suit in Tennessee is one year.[4] Tenn. Code Ann. § 28-3-104(a)(1). Accordingly, Wagner was required to file his claims for damages for personal injury on or before August 11, 2014. Wagner initiated the instant action on August 8, 2014. (Docket No. 1.) However, Wagner did not file the Motion for Leave to Amend the Complaint to add MMSS and DRM as defendants until April 30, 2015, nor file the Second Amended Complaint against MMSS and DRM, upon granting of the motion by the court, until June 9, 2015. (Docket Nos. 63, 67.) Measuring from either of these dates, it is clear that Wagner only acted against MMSS and DRM approximately twenty-one or twenty-two months after the date of his injury and nine or ten months after the expiration of the one-year statute of limitations period. Accordingly, MMSS and DRM contend that Wagner's claims against them must be dismissed. Wagner argues, to the contrary, that his claims against MMSS and DRM are not time-barred for two reasons: one, they are protected by Section 20-1-119 and two, they are protected by the "discovery rule." The court will address these arguments in turn.

---

[4] Statutes of limitations promote fairness and justice. *Redwing v. Catholic Bishop for Diocese of Memphis*, 363 S.W.3d 436, 456 (Tenn. 2012); *Pero's Steak & Spaghetti House v. Lee*, 90 S.W.3d 614, 621 (Tenn. 2002). They are shields, not swords, *Lawman v. Barnett*, 177 S.W.2d 121, 128 (1944), and they reflect "'a societal choice that actions must be brought within a certain time period.'" *Parrish v. Marquis*, 172 S.W.3d 526, 532 (Tenn. 2005) (citation omitted). They are based on the presumption that persons with the legal capacity to litigate will not delay bringing suit on a meritorious claim beyond a reasonable time. *Hackworth v. Ralston Purina Co.*, 381 S.W.2d 292, 294 (Tenn. 1964); *see also Riddlesbarger v. Hartford Ins. Co.*, 74 U.S. 386, 390 (1869).

## I.    Tennessee Code Annotated Section 20-1-119

First, Wagner contends that he is permitted to file suit against MMSS and DRM by the

provisions of Tennessee Code Annotated Section 20-1-119, which allows a plaintiff to add a new

defendant to a lawsuit, via a motion to amend, within ninety days of an existing defendant's

alleging fault against a non-party.  Wagner contends that Section 20-1-119 is satisfied because

IAC and CER (1) stated in their Answers the affirmative defenses that unnamed third parties

committed intervening acts, and (2) identified MMSS and DRM in an interrogatory response as

having been involved in the moving and installing of the mold press.

Section 20-1-119 provides, in pertinent part:

> (a) In civil actions where comparative fault is or becomes an issue,
> if a defendant named in an original complaint initiating a suit filed
> within the applicable statute of limitations, or named in an
> amended complaint filed within the applicable statute of
> limitations, *alleges in an answer or amended answer to the
> original or amended complaint that a person not a party to the suit
> caused or contributed to the injury or damage for which the
> plaintiff seeks recovery*, and if the plaintiff's cause or causes of
> action against that person would be barred by any applicable statute
> of limitations but for the operation of this section, the plaintiff may,
> within ninety (90) days of the filing of the first answer or first
> amended answer alleging that person's fault, either:
> (1) Amend the complaint to add the person as a defendant . . .

*Id.* (emphasis added).[5]

---

[5] The purpose of Section 20-1-119 is to provide plaintiffs "with a fair opportunity to bring
before the [trial] court all persons who caused or contributed to the [plaintiff's] injuries." *Mann
v. Alpha Tau Omega Fraternity*, 380 S.W.3d 42, 50 (Tenn. 2012) (quoting *Townes v. Sunbeam
Oster Co.*, 50 S.W.3d 446, 451 (Tenn. Ct. App. 2001)).  It enables a plaintiff to amend his
complaint to add a non-party alleged by another defendant to have caused or contributed to the
plaintiff's injury, even if the applicable statute of limitations would otherwise bar the plaintiff's
claim against the non-party. *Jones v. Prof'l Motorcycle Escort Serv., L.L.C.*, 193 S.W.3d 564,
567–68 (Tenn. 2006).  It is broadly construed because it is an integral part of a comparative fault
system that is built on the concepts of fairness and efficiency. *Mann*, 380 S.W.3d at 50; *Browder
v. Morris*, 975 S.W.2d 308, 312 (Tenn. 1998).  Section 20-1-119 helps to mitigate the burden a

As interpreted by the Tennessee courts, two conditions need to be satisfied for Section 20-1-119 to apply: "[t]he first condition is that one of the defendants must name the comparative tortfeasor as one who caused or contributed to the injury or damage for which the plaintiff seeks recovery. The second condition is that the named comparative tortfeasor is not a party to the suit." *Townes*, 50 S.W.3d at 446 (Tenn. 2001) (emphasis added);[6] *see also Austin v. State of Tennessee*, 222 S.W.3d 354, 358 (Tenn. 2007) (stating that Section 20-1-119 applies "whenever a plaintiff gives notice of the identity of a potential non-party tortfeasor and alleges facts that reasonably support a conclusion that the non-party caused or contributed to the plaintiff's injury" and finding the statute applied where the defendant's allegations clearly supported the conclusion that the state, explicitly identified as a non-party, was responsible for the plaintiff's injuries).

In addition, the non-party must be named, as specified by the clear language of the statute, "in an answer or amended answer," not in a discovery response or other manner. "If a statute's language is expressed in a manner devoid of ambiguity, courts are not at liberty to depart from the statute's words." *Freeman v. Marco Transp. Co.*, 27 S.W.3d 909, 911 (Tenn. 2000); *see Schultz v. Davis*, 495 F.3d 289, 294 (6th Cir. 2007) (applying Tennessee law and concluding that learning of the identity of a third party through a discovery disclosure instead of an answer

---

plaintiff would face in having to file actions against all potential defendants in a single complaint; but, in doing so, it places key importance upon what is revealed by the defendants in their answers. *See Townes*, 50 S.W.3d at 452-54; *Becker v. Ford Motor Co.*, 431 S.W.2d 588, 592-95 (2014).

[6] The Tennessee Supreme Court recently confirmed that it "is beyond peradventure" that *Townes* is controlling authority for purposes of interpreting Section 20-1-119. *Becker*, 431 S.W.2d at 594.

precluded application of Section 20-1-119);[7] *Austin*, 222 S.W.3d at 358 (stating Section 20-1-119 applies "whenever a defendant's answer" gives plaintiff notice of the identity of potential non-party tortfeasor); *McNabb*, 98 S.W.3d at 654 (noting that Section 20-1-119 applies when a "defendant's answer asserts comparative fault and identifies a tortfeasor against whom the statute of limitations has run"); *Grindstaff v. Bowman*, 2008 WL 2219274, at *4 (Tenn. Ct. App. 2008) (rejecting application of Section 20-1-119 and noting that "[a] letter from [the defendant's] attorney to the plaintiffs' attorney [notifying him of the identity of a non-party potential tortfeasor], which was not made a part of [the defendant's] formal answer and only became part of the record when the plaintiffs offered it as an exhibit in opposition to summary judgment, is simply is not the same thing as an 'answer,'" as required by the clear and unambiguous language of the statute).

Wagner, therefore, cannot rely on Section 20-1-119 to save his claims against MMSS and DRM. A general reference to unknown intervening third parties by IAC and CER in their Answers did not "name" or in any way "identify" MMSS or DRM as a non-party potential comparative tortfeasor. Nor were MMSS or DRM sufficiently "named" for purposes of Section 20-1-119 by the interrogatory response, for two reasons. First, an interrogatory response is not an "answer or amended answer," as required by the statute's plain language. Second, the actual interrogatory response merely states the tasks that were performed by MMSS and DRM but does not allege, as explicitly required by Section 20-1-119 and *Townes*, that MMSS or DRM "caused or contributed to the injury or damage for which the plaintiff seeks recovery."

---

[7] The Tennessee Supreme Court recently disagreed with a different aspect of *Schultz*, but this aspect of the decision was unquestioned. *See Becker*, 431 S.W.2d at 594.

The court finds Wagner's argument based on general principles of fairness unpersuasive. In addition, Wagner relies upon a case that is distinguishable. Wagner cites a case in which the Tennessee Court of Appeals sanctioned the application of Section 20-1-119 in adding two new defendants to an action, despite the fact that the original defendant "did not specifically state their names." *See Romine v. Fernandez*, 124 S.W.3d 599, 604-05 (Tenn. Ct. App. 2003). In *Romine*, a medical malpractice action, the plaintiff initially named only one physician as a defendant, alleging, among other things, negligent administration of a drug. The physician stated in his answer that if other unnamed hospital staff members administered the drug – and not at his direction – that he may assert comparative fault. *Id.* at 604. The court found these statements sufficient to put the plaintiff on notice that someone other than the one named physician, among a small group of people at the hospital, may have administered the drug and that the plaintiff could easily discover those persons' names. *Id.*

*Romine* is unlike the instant case because, while not specifically naming the tortfeasors, the physician provided specific factual context in his answer that identified them as, necessarily, members of the plaintiff's medical treatment team. Indeed, the only reason the physician did not name the person or persons who administered the drug was because he was not sure which medical team member specifically did so; he was sure, however, that, if the drug was administered, one or more of them must have done so. The court determined that, interpreting Section 20-1-119 broadly, in such a context, it would be acceptable for the plaintiff to obtain the names of those medical team members and add them as co-defendants. *Id.* at 604-05.[8] No such

---

[8] Notably, *Romine* had a dissenting opinion that argued in strong terms that the majority's conclusion was in direct disregard of the rules of statutory construction. *See Romine*, 124 S.W.2d at 608. Moreover, the only authority cited in *Romine* to support its holding is *Soper v.*

situation exists here. IAC and CER offered no allegations in their Answers related to the moving

and installation services that MMSS or DRM apparently performed that would have even

suggested the involvement of MMSS or DRM to Wagner.

Accordingly, the court finds that Section 20-1-119 is not applicable and does not allow

Wagner to add his claims against MMSS and DRM after the limitations period has expired.

## II.     Discovery Rule

Wagner also contends that, because he learned of the identity of MMSS and DRM for the

first time on April 10, 2015, "and he had no other method available to determine the identity of

[MMSS and DRM] prior to [d]efendants identifying [them], this lawsuit is timely" under

Tennessee's "discovery rule." (Docket No. 84 at p. 5.)

As the Sixth Circuit has explained, the Tennessee Supreme Court describes the

"discovery rule" as follows:

> Under the "discovery rule" applicable in tort actions, ... the cause
> of action accrues and the statute of limitations begins to run when
> the injury occurs or is discovered, or when in the exercise of
> reasonable care and diligence, it should have been discovered. The
> discovery rule applies only in cases where the plaintiff does not
> discover and reasonably could not be expected to discover that he
> had a right of action. Furthermore, the statute is tolled only during
> the period when the plaintiff had no knowledge at all that the
> wrong had occurred and, as a reasonable person, was not put on
> inquiry.

*Schultz*, 495 F.3d at 292 (citing *Potts v. Celotex Corp.*, 796 S.W.2d 678, 680-681 (Tenn. 1990)

(internal citations omitted)). Wagner argues that his delayed discovery of the identities of

MMSS and DRM changes the date the statute of limitations began to run under the discovery

_____

*Wal-Mart Stores, Inc.*, 923 F.Supp. 1032, 1038 (M.D. Tenn. 1996), a case which offered no
citation to Tennessee caselaw. *Id.*

rule. However, the discovery rule only serves to change a statute of limitations where there is a delay in the discovery of the actual injury.[9] Here, there is no dispute that Wagner's *injury* both occurred and was discovered on August 11, 2013. Wagner's injury was immediate and apparent; being crushed by the mold press could hardly be described otherwise. Accordingly, under the discovery rule, Wagner's cause of action accrued on August 11, 2013 and the statute of limitations began to run as of that date.

Wagner contends that the accrual of a personal injury cause of action under the discovery rule hinges on the identification of the tortfeasor in addition to the date that a plaintiff became aware of the injury – stated differently, that no matter when one may become aware that he has been injured, his cause of action against each potential defendant does not accrue until he discovers their identity. However, this is a vastly expansive reading of the discovery rule that is not supported by the caselaw. Indeed, even the cases that Wagner relies upon do not support this interpretation of the discovery rule.

*Foster v. Harris*, 633 S.W.2d 304, 305 (Tenn. 1982), involved the plaintiff's contracting serum hepatitis that was diagnosed in 1976. Despite the plaintiff's efforts to discover the source of the disease, he was unsuccessful until – to his surprise – he went to his dentist's office and was informed that the dentist had transmitted it to the plaintiff by accident in the prior year through blood contact. The court found that, "[b]efore then, it was unreasonable for [the plaintiff] to know who gave him hepatitis, given the manner in which it is transferred." *Schultz*, 495 F.3d at

---

[9] "In the vast majority of personal injury cases . . . the date of the injury and the date of discovery are simultaneous." *Teeters v. Curry*, 518 S.W.2d 512 (Tenn. 1974) (Harbison, J., concurring).

292. The court, therefore, tolled the statute of limitations under the discovery rule and

determined that the cause of action accrued on the date in 1976 that the dentist notified the

plaintiff that he had infected him, not on the actual date of infection in 1975. *Id.* at 293. Here,

there is no such problem. The manner in which Wagner was injured was apparent at the time of

the injury. It was not unreasonable for him to know that liability may fall to anyone involved in

any way with the machine that injured him. This would include, among others, those responsible

for the installation, maintenance, operation and, of course, design and manufacture of the

machine.

   *Sherrill v. Souder*, 325 S.W.3d 584, likewise does not help the plaintiff's argument.

*Sherrill* is limited to the medical malpractice context, and the court expressly stated that it was

discussing the "scope of the discovery rule in medical malpractice cases." *Id.* a 593. As the court

further explained:

> As a matter of policy, our discovery rule stakes out a sensible
> middle ground that protects both those making claims, by ensuring
> that the period during which a malpractice suit can be filed does
> not expire before discovery, and those against whom claims are
> made, by preventing the prosecution of stale medical malpractice
> claims. The cause of action accrues on inquiry notice of a
> wrongful act.

*Sherrill*, 325 S.W.3d at 596 (citing *Rathje v. Mercy Hosp.*, 745 N.W.2d 443, 452–53 (Iowa

2008)). The *Sherrill* court surveyed medical malpractice discovery law, including the application

of the discovery rule, in several cases in which plaintiffs did not discover that they were injured

by physicians or blood labs until after the statute of limitations had expired. *Id.* at 594-96.

*Sherrill* itself turned in part on when the plaintiff's medical condition arose and whether the

plaintiff had notice, when the condition arose, that it could have been caused by medical

12

malpractice.[10]  *See id*. at 603.  This circumstance is not analogous to this case because, as soon as

Wagner was aware of his injury, he was also necessarily aware that it was (1) caused by the mold

press and (2) could have been caused by anyone whose negligence could have caused the mold

press to malfunction.

Finally, Wagner cites *Redwing* for an example of the "expansive nature of the discovery

rule."  (Docket No. 84 at p. 10.)  *Redwing*, however, involved the issue of fraudulent

concealment, which is not at issue in this action.  In *Redwing*, the court denied a defendant's

motion to dismiss claims for sexual abuse of minors who brought the claims years after they

turned eighteen, because of factual disputes as to whether the defendant *fraudulently concealed*

its knowledge and responsibility for the abusers' conduct.  Therefore, "the pivotal issue [wa]s

whether [the plaintiff] would have discovered the [defendant's] allegedly wrongful acts had he

exercised reasonable care and diligence."  *Redwing*, 363 S.W.3d at 466.  Fraudulent concealment

by MMSS and DRM, however, has not been alleged in this case, and there is no question that

Wagner could have discovered their identities had he exercised reasonable diligence.

Finally, Wagner suggests in his Sur-Reply that his delay in identifying MMSS and DRM

is excusable because it is attributable, at least in part, to the "Federal Rules of Civil Procedure

delaying discovery responses until scheduling conferences are held."  (Docket No. 95 at p. 4-5.)

This is unpersuasive.  As of August 11, 2013, Wagner was aware – *i.e.*, was on "constructive" or

"inquiry" notice – that he had been injured, could have had a cause of action against the parties

involved in any way with the mold press, and should have sought to investigate and discover the

---

[10] In the end, *Sherrill* was not decided on these grounds – the court's decision focused on
the plaintiff's competency and whether that could serve as a basis for tolling the statute of
limitations.  *Sherrill*, 325 S.W.3d at 603.

13

identity of those parties within the limitations period.[11]  However, Wagner waited almost exactly

one year from the date of his injury to file his lawsuit, using up nearly twelve months of time

during which this case could have advanced before even filing the action.  Had he pursued his

litigation more diligently from the outset, discovery would have come sooner.  *See, e.g., Schultz*,

495 F.3d at 293 (finding discovery rule did not apply to toll statute of limitations where plaintiffs

were injured by stacked sheetrock and were on notice that they could have had a cause of action

against the party who delivered and stacked the sheetrock, but did not timely discover the

identity of that party and file an amended complaint); *Gibson v. Lockwood Prods. Div. Of J.L.*

*Underwood*, 724 S.W.2d 756, 758-59 (Tenn. 1986) (in machine injury case, finding plaintiff did

not exercise due diligence to discover identity of installer where the only step taken was to

propound interrogatories ten months after the accident).  Moreover, if Wagner was concerned

about the timing of discovery, he was free to move the court to allow limited out-of-time

discovery from the defendants as to the identities of the mover and installer of the mold press; he

_____

[11] Under the discovery rule, a cause of action accrues – and the statute of limitations
begins to run – not only when the plaintiff has actual knowledge of a claim, but also when the
plaintiff has actual knowledge of "facts sufficient to put a reasonable person on notice that he [or
she] has suffered an injury as a result of wrongful conduct." *Redwing*, 363 S.W.3d at 459 (citing
*Carvell v. Bottoms*, 900 S.W.2d 23, 29 (Tenn. 1995)).  This latter circumstance is variously
referred to as "constructive notice" or "inquiry notice."  The Tennessee Supreme Court has
explained that inquiry notice "charges a plaintiff with knowledge of those facts that a reasonable
investigation would have disclosed . . . [O]nce a plaintiff gains information sufficient to alert a
reasonable person of the need to investigate 'the injury,' the limitation period begins to run."
*Sherrill v. Souder*, 325 S.W.3d 584, 593 n.7 (Tenn. 2010) (citing *Rathje,* 745 N.W.2d at 461;
*Diamond v. Davis*, 680 A.2d 364, 372 (D.C. 1996) (defining inquiry notice as the "notice which a
plaintiff would have possessed after due investigation")); *see also Doe v. Catholic Bishop For*
*Diocese of Memphis*, 306 S.W.3d 712 (Tenn. Ct. App. 2009) ("[T]olling theories . . . are only
available to a plaintiff who has exercised reasonable diligence. "[T]he plaintiff must go find the
facts; [he] cannot wait for the facts to find [him].") (citing *Jolly v. Eli Lilly & Co.*, 751 P.2d 923
(Cal. 1988)).

chose not to do so.[12]

### III.    Summary

The one year statute of limitations in this action began running on August 11, 2013, the date Wagner was injured and became aware that his injuries was caused by the mold press. The discovery rule does not extend the statute of limitations in this action merely because Wagner did not discover the identity of MMSS and DRM until after interrogatory responses were served in this action. Similarly, the interrogatory response referencing MMSS and DRM does not render their addition as defendants proper under Section 20-1-119. Accordingly, Wagner's claims against MMSS and DRM, which were filed after the statute of limitations period expired, will be dismissed.

### CONCLUSION

For the foregoing reasons, the Motion to Dismiss filed by defendant Machinery Movers & Structural Specialist (Docket No. 78) is **GRANTED** and the Motion to Dismiss filed by defendant DRM, LLC (Docket No. 82) is **GRANTED**. All claims against Machinery Movers & Structural Specialist and DRM, LLC are **DISMISSED WITH PREJUDICE**.

It is so **ORDERED**.

Enter this 16th day of September.

_____
ALETA A. TRAUGER
United States District Judge

---

[12] Wagner has also not discussed why, during the limitations period, he did not simply ask IAC or CER for the names of other possible parties involved in any way with the mold press. *See, e.g., Gibson*, 724 S.W.2d at 758 (disapproving plaintiff's efforts at due diligence in part because "[p]laintiff at no time attempted to identify the manufacturer of the machine by contacting his employer.")